OLANTA COAL MIN. CO. v. BEECH CREEK R. CO. et al.

(Circuit Court, W. D. Pennsylvania. February 12, 1906. Rehearing Denied.)

No. 33.

1. RAILROADS—RIGHT OF COAL MINERS TO CONNECT SWITCH TRACKS.

Under the Constitution and statutes of Pennsylvania, which make all railroads public highways and all railroad companies common carriers, the owner of coal mining property adjoining the right of way of a railroad is entitled as a matter of right to connect switch tracks built on his own land with the track of such road, to facilitate the loading and shipping of coal.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 118.]

2. CARRIERS—DUTY TO ACCEPT SHIPMENTS.

A railroad company cannot refuse to accept and transport coal tendered by a shipper, on the ground that it is of inferior quality to other coal also produced on its line, and that the marketing of such coal will injuriously affect the sale and consequently the shipment of the superior quality.

[Ed. Note.—Duties and liabilities of carriers as to furnishing facilities for transportation, see note to Harp v. Choctaw, O. & G. R. Co., 61 C. C. A. 414.]

In Equity.

David L. Krebs, for complainant.
M. E. Olmsted, for respondents.

BUFFINGTON, District Judge. This is a bill in equity brought August 1, 1904, by the Olanta Coal Mining Company, a corporation of the state of Pennsylvania, in the court of common pleas of Clearfield county, Pa., against the Beech Creek Railroad Company, a corporation of the same state, and its lessee, the New York Central & Hudson River Railroad Company, a corporation of the state of New York. The latter company alleged itself to be the real and only party in interest, and removed the case to this court.

Passing by the many irrelevant matters and proofs in the voluminous record, we address ourselves to the gist of the bill, which, in sub-

stance, is to compel the railroad to permit switch connections with its line to enable complainant to ship its coal to market. The latter is a coal mining corporation, chartered July 9, 1903, and by its charter is authorized to carry on the business "of mining, shipping and selling of coal and the manufacturing, shipping and selling of coke and other products of coal." Its mining property of some 610 acres contains approximately 550 acres of coal, in which are several different veins. The property adjoins the right of way of the railroad. It has no other outlet for its coal save said road. The Beech Creek Railroad Company was chartered under the provisions of the general railroad act of Pennsylvania of April 4, 1868, and its supplements. It leased its property to the New York Central Railroad Company by a long term lease. It is conceded that all its duties and obligations rest on its lessee, the New York Company. By virtue of the Constitution of Pennsylvania (Article 17, § 1), which provides, "All railroads and canals shall be public highways, and all railroads and canal companies shall be common carriers," and the general railroad law of February 19, 1849, which provides, "Upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the convenience of passengers and the transportation of freight," the Beech Creek Railroad is a public highway and is chargeable with the duties and obligations of a common carrier. Such is the view of the highest courts of that state. In Railroad Company v. Colwell, 39 Pa. 339, 80 Am. Dec. 526, it is said:

"Though the corporation in respect to its capital is private, yet it was created to accomplish objects in which the public have a direct interest, and its authority to hold land was conferred that these objects might be worked out."

And this accords with the general federal view. "The question," says the Supreme Court of the United States, in Cherokee Nation v. Southern Kansas Railroad Company, 135 U. S. 657, 10 Sup. Ct. 965, 34 L. Ed. 295, "is no longer an open one, as to whether a railroad is a public highway established primarily for the convenience of the people and to subserve public ends." Its road then being a public highway, and it a common carrier, its duty, generally stated, is to receive from any person for carriage and transportation such freight as the carrier holds itself out as willing to carry and the party sending offers to pay freight upon. New Jersey Steam Navigation Company v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465; Southern Express Company v. St. Louis, 5 Myer's Fed. Decisions, § 1511. Now in mining, coal is carried from the mines in small cars and delivered to and carried by railroad companies in car load lots. To do this requires sidings on which the railroad's cars may be conveniently handled and filled. Such a connection the complainant asks, and is willing to bear the expense of making. Whatever may be the rights of shippers and the obligations of railroads in other jurisdictions, the general right of the adjoining property holders in Pennsylvania to such connection with a railroad chartered by that state has been decided by the highest court of that state in the case of the Pittsburgh & Lake Erie Railroad Company v. Robinson, 95 Pa. 428. There Robinson was

the owner of a manufacturing site adjoining the railroad, and the question was the value of the land which the railroad was condemning in part. It was held that the property owner had a right to switch connection with the railroad, and that this right was an element in determining the value of his land and the proposition "that the defendant company is a common carrier, that its railroad is a public highway, that the plaintiffs have a right in law to construct on their land, adjoining said railroad, a suitable switch for the uses of their business, and connect the same with the tracks of the defendant company, subject to the general rules of said company regulating such connections, and that the defendant company is bound to receive and deliver to and from such switch or siding, cars and freight for the said plaintiffs to and from such points, on the line of defendant's railroad, as may be designated by plaintiffs, and on equal terms with all other individuals or transportation companies," was held a proper definition of his rights in that regard. In considering this proposition, the court said:

"We are also of opinion that the plaintiff's third point should have been affirmed. It is conceded that, under our acts of Assembly, the owner of mills and manufactories may of right connect their private sidings with the railroads of their vicinity, and though, as the counsel for the defendant in error says, it does not follow that such owners may ever avail themselves of such right, nevertheless, the fact that such a right exists in them may largely advance the market value of their several properties. Certainly privileges which may be used to facilitate transportation to and from large factories must have some effect upon their values."

Under this construction thus placed upon its own laws by the court of highest resort of Pennsylvania, the right of a mine operator to proper and reasonable switch connections is clear, unless there is something in the facts and circumstances of the particular case warranting a refusal of this right. We find none here. The complainant offers to bear the entire expense of the connection and siding. It is willing that the connection be made in the mode and at the point the respondent prefers. We are not impressed with the contention of the respondent that there are engineering difficulties in locating a switch to reach a siding for the complainant. No such question was raised during the many interviews between these parties prior to the refusal of the railroad company to grant a switch connection. The answer to the bill by the New York Central Railroad Company avers no such difficulties. On the contrary, the answer admitted "that it is abundantly able to grant the siding and the track connections with its road and has granted unto Irish Bros., miners and shippers of coal, a siding or track connection, and has also granted and constructed other sidings and switching connections for other lessees of coal and operators along the line of the Pennsylvania Division of the New York Central & Hudson River Railroad, meaning thereby the Beech Creek Railroad." It was not until a year after the answer was filed that the question of engineering difficulties was raised by an amendment then made. Under the proceedings and proofs, we are of opinion, and so find, that the respondent has failed to show the existence of any engineering difficulties, hazards, or op-

erating difficulties, which make it unreasonable, unwise, or inequitable for a chancellor to grant the prayer of this bill.

The second contention of the railroad is that the coal carried by the Beech Creek Road has gained a high reputation in the market, which has inured to the benefit of the road as a coal carrier and increased its trade; that the complainant's coal is of an inferior character, and its introduction into the market would injuriously affect the reputation of the coal market from that section, and so injure and decrease the carrying business of the road. We have been cited to no power or right vested in a common carrier to thus refuse to transport freight of the general class it is carrying because of the inferiority of the particular lot in question. The all-sufficient answer to a claim on the part of a common carrier to exercise such a power is simply that it does not exist, and the proofs in this case do not satisfy us that, if it did, the respondent has shown by the weight of the proof that its contention as to the character of complainant's coal is established, or that any such damage as is here averred to its business as a common carrier would ensue.

Let a decree be submitted for approval and signing.